UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/7/2026

PATRICIA A.,[1]

                              Plaintiff,

            -v-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

**REPORT AND
RECOMMENDATION**

25-CV-5209 (VSB) (HJR)

**HENRY J. RICARDO, United States Magistrate Judge.**

**To the Honorable Vernon S. Broderick, United States District Judge:**

Plaintiff Patricia A. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits under the Social Security Act (the "Act"). For the reasons described below, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and Plaintiff's action **DISMISSED**.

I.      BACKGROUND

        A.      Procedural Background

Plaintiff applied for disability insurance benefits on January 15, 2021 due to a right ankle fracture, complex regional pain syndrome, right upper extremity

---

[1] To preserve her privacy, Plaintiff is referred to by her first name and the first initial of her last name.

impairment, schizophrenia, and bipolar disorder.  ECF No. 7 ("AR") at 143, 146.[2]

Plaintiff's claim was initially denied on June 9, 2021.  *Id.* at 165.  On

reconsideration, Plaintiff's claim was again denied on November 3, 2021.  *Id.* at 143.

Plaintiff then filed a written request for a hearing, which was held on April 12,

2022.  *Id.*  By decision dated November 28, 2022, an Administrative Law Judge

("ALJ") found Plaintiff not disabled within the meaning of the Act.  *Id.* at 154.

Plaintiff requested a review by the Appeals Council, which vacated and

remanded the case on May 23, 2023.  *Id.* at 161–62.  A hearing was held before the

same ALJ on March 1, 2024.  *Id.* at 10.  The case was then reassigned to a different

ALJ, who issued a decision on August 5, 2024 finding Plaintiff not disabled.  *Id.* at

23.  Specifically, the ALJ reached the following conclusions:

- The claimant meets the insured status requirements of the Social Security Act through June 30, 2026.  *Id.* at 13.

- The claimant has not engaged in substantial gainful activity since December 27, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).  *Id.*

- The claimant has the following severe impairments: obesity, status post-right ankle surgeries, complex regional pain syndrome, right shoulder osteoarthritis, schizoaffective disorder, and bipolar disorder (20 CFR 404.1520(c)).  *Id.*

- The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  *Id.* at 14.

- [T]he claimant has the residual functional capacity to perform a reduced range of sedentary work.  She can lift/carry 10 pounds occasionally and less than 10 pounds frequently.  During an eight-hour workday, she can sit for six

---

[2] Citations to the Administrative Record are to the page numbers stamped at the bottom right of each page.  The Administrative Record includes ECF Nos. 7–7-7.  Page numbers cited in all other court filings refer to the ECF-generated pagination.

hours and stand/walk for two hours.  She needs to use a cane for ambulation but can carry a small item in the free hand.  She cannot reach overhead with the right arm but can reach at desk level.  There are no limits using the left arm.  She can occasionally climb stairs and stoop, but cannot kneel, crouch, crawl, squat, climb ladders, or use foot controls.  She cannot walk, stand, or run on narrow slippery or erratically moving surfaces.  She can understand, remember, and carry out simple instructions.  She can work with the public on a one-to-one basis but cannot work with the public if more than one person is involved in the interaction.  She can work in proximity to coworkers but should not work on joint or shared tasks.  *Id.* at 16.

- The claimant is unable to perform any past relevant work (20 CFR 404.1565).  *Id.* at 21.

- The claimant was born on December 25, 1980 and was 39 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563).  *Id.*

- The claimant has a limited education (20 CFR 404.1564).  *Id.*

- Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).  *Id.* at 22.

- Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).  *Id.*

- The claimant has not been under a disability, as defined in the Social Security Act, from December 27, 2019, through the date of this decision (20 CFR 404.1520(g)).  *Id.* at 23.

The Appeals Council denied Plaintiff's request for review on April 28, 2025, rendering the ALJ decision the final decision of the Commissioner.  *Id.* at 1.

Plaintiff sought review in this Court by commencing this action on June 23, 2025.  ECF No. 1.  Plaintiff filed her Motion for Judgment on the Pleadings on November 18, 2025.  ECF No. 11.  The Commissioner filed his brief in opposition to

3

Plaintiff's brief on December 22, 2025.  ECF No. 14.  Plaintiff filed her reply on January 12, 2026.  ECF No. 17 (the "Reply").

### B.     Medical Evidence

The record contains several medical opinions.  Because Plaintiff does not challenge the ALJ's decision regarding her physical conditions, the following discussion focuses on Plaintiff's psychiatric evaluations.

On March 28, 2021, Dr. Todd Deneen conducted a consultative examination of the Plaintiff.  AR at 858.  Dr. Deneen concluded that Plaintiff had no limitation in her ability to "[i]nteract adequately with supervisors, co-workers, and the public, maintain personal hygiene and appropriate attire, and have awareness of normal hazards and take precautions."  *Id.* at 861.  He further opined that Plaintiff had mild limitations in her ability to "[u]nderstand, remember, or apply simple directions and instructions, use reason and judgment to make work-related decisions, sustain concentration and perform a task at a consistent pace, and sustain an ordinary routine and regular attendance at work."  *Id.*  Further, Dr. Deneen noted that Plaintiff had moderate limitations in her ability to "[u]nderstand, remember, or apply complex directions and instructions and regulate emotions, control behavior, and maintain well-being."  *Id.*  Dr. Deneen found that Plaintiff's difficulties are caused by cognitive deficits and mood symptoms.  *Id.*  Dr. Deneen described Plaintiff's diagnosis as "[a]ttention deficit hyperactivity disorder by history[,] [u]nspecified bipolar and related disorder with anxious distress [and] [s]timulant use disorder in remission."  *Id.*

4

On June 8, 2021, Dr. E. Kamin reviewed the record evidence. *Id.* at 108. Based on this review, Dr. Kamin concluded that Plaintiff was not significantly limited in her ability to carry out short and simple instructions, and was moderately limited in her ability to carry out detailed instructions. *Id.* at 111. Dr. Kamin also noted that Plaintiff was not limited in her ability to interact appropriately with the general public, but was moderately limited in her ability to get along with coworkers. *Id.* at 112–13. Similarly, on September 17, 2021, Dr. O. Fassler reviewed the record evidence and opined that Plaintiff "retains the ability to perform the basic mental demands of unskilled work." *Id.* at 136.

## II.    LEGAL STANDARDS

### A.    Standards Governing Agency Evaluation of Disability Claims

Pursuant to the Act, a "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §423(d)(3).

To make a disability determination, an ALJ will proceed through a five-step analysis. *See* 20 C.F.R. § 404.1520. "The steps are followed in order: if it is determined that the claimant is not disabled at a step of the evaluation process, the

evaluation will not progress to the next step." *Martinez v. Comm'r of Soc. Sec.,* No. 18-CV-580, 2019 WL 1331399, at *2 (S.D.N.Y. Mar. 25, 2019).  The claimant bears the burden of proof for steps one through four; the Commissioner bears the burden as to step five.  *Id.*  The five-step analysis proceeds as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  Where the claimant is not, the Commissioner next considers whether the claimant has a 'severe impairment' that significantly limits her physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work.  Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

*Jasinski v. Barnhart*, 341 F.3d 182, 183–84 (2d Cir. 2003) (quoting *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)).

## B.      Standards Governing Agency Evaluation of Medical Opinion Evidence

The Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence in January 2017.  *See* 20 C.F.R. § 404.1520c.  Because Plaintiff applied for benefits in 2021, these regulations apply here.

Under the new regulations, the ALJ considers all medical opinions and evaluates their persuasiveness based on their supportability, consistency, relationship with the claimant, specialization, and other factors.  *See Id.* § 404.1520c(a)–(c).  An ALJ must "articulate how [they] considered the medical

opinions," as well as "how persuasive [they] find all of the medical opinions," with an emphasis on the supportability and consistency factors. *Id.*

Supportability refers to the extent to which a medical opinion is supported by "objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). "Simply put, supportability is an inquiry confined to the medical source's own records that focuses on how well a medical source supported and explained their opinion." *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021). Consistency refers to the extent to which a medical source's opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). "Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Vellone*, 2021 WL 319354, at *6. After assessing each medical opinion, the ALJ is free to weigh the evidence as he sees fit, so long as the conclusion is supported by substantial evidence. *See Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) ("[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971))).

### C.    Standards Governing Judicial Review of Agency Decision

"A motion for judgment on the pleadings should be granted if it is clear from the pleadings that 'the moving party is entitled to judgment as a matter of law.'" *Martinez*, 2019 WL 1331399, at *2 (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l*

7

*Union*, 47 F.3d 14, 16 (2d Cir. 1995)). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A court reviewing a final decision by the Commissioner will consider "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Russ v. Comm'r of Soc. Sec.*, 582 F. Supp. 3d 151, 157 (S.D.N.Y. 2022) (quotations and citations omitted). "Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles." *Id.* at 157–58 (citations omitted). An ALJ's "[f]ailure to apply the correct legal standard constitutes reversible error . . . . *Id.* at 157 (quotations and citations omitted).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations and citations omitted). If sufficient evidence supports the ALJ's final decision, the Court must grant judgment in favor of the Commissioner, even if substantial evidence also supports the plaintiff's position. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("The substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." (cleaned up)). Therefore, the reviewing Court's role is limited, and substantial deference is afforded to the ALJ's decision. *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008).

8

## III.   DISCUSSION

Plaintiff seeks remand on three grounds: (1) the ALJ relied on erroneous vocational expert ("VE") testimony; (2) the VE failed to identify jobs that exist in significant numbers in the national economy; and (3) the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence.  Plaintiff's Memorandum of Law, ECF No. 12 ("P. Memo.") at 15, 17, 19.  Each argument is addressed below, with points 1 and 2 analyzed together.

### A.   The ALJ Did Not Err by Relying on VE Testimony

At the fifth stage of an ALJ's analysis, the burden shifts to the Commissioner to demonstrate that "a significant number of jobs (in one or more occupations) having requirements which [claimant is] able to meet with [her] physical or mental abilities and vocational qualifications" exist in the national economy.  20 C.F.R. § 404.1566(a)–(b).  To make this determination, the ALJ "will take administrative notice of reliable job information available from various governmental and other publications[]" including the "Dictionary of Occupational Titles ["DOT"], published by the Department of Labor."  *Id.* § 404.1566(d).  The Commissioner may also "use the services of a vocational expert or other specialist" to determine whether the claimant's work skills can be utilized in specific occupations.  *Id.* § 404.1566(e).

Plaintiff's first argument is that remand is required because the ALJ relied on erroneous VE testimony based on the DOT to conclude that Plaintiff could perform the jobs of telephone information clerk, document preparer, and para mutual ticket checker, which Plaintiff contends are obsolete.  *See* P. Memo. at 15–

17.  Plaintiff then argues that because the VE identified only obsolete jobs, the VE failed to identify jobs that exist in significant numbers in the national economy.  *Id.* at 17–19.

A very recent decision rejected this same argument, advanced by the same counsel.  *See A.A. v. Comm'r of Soc. Sec.*, No. 24-CV-7827, 2026 WL 810302 (S.D.N.Y. Mar. 23, 2026).  In addressing plaintiff's argument that the Commissioner erred because the VE identified only obsolete jobs that do not exist in significant numbers in the national economy, that court concluded, "[t]his argument has been consistently rejected by courts in this Circuit and Plaintiff cites no authority to the contrary."  *Id.* at *8 (citing *Nicole Ann B. v. Comm'r of Soc. Sec.*, No. 25-CV-858, 2025 WL 3157743, at *7 (S.D.N.Y. Nov. 12, 2025)); *see also Johnson v. Saul*, No. 19-CV-1222, 2020 WL 6562402, at *11 (D. Conn. Nov. 9, 2020) ("[I]t is well settled that 'the DOT, despite not having been updated in more than 25 years, remains an accepted basis for vocational opinion according to the Commissioner's rules.'" (quoting *Strong v. Berryhill*, No. 17-CV-1286, 2019 WL 2442147, at *6 (W.D.N.Y. June 12, 2019))).  Moreover, "[o]ther courts, including the Second Circuit in an unpublished decision, have declined to make a judicial finding as to whether an occupation is obsolete and have concluded that the ALJ is entitled to rely on the vocational expert's testimony."  *Chaderick G. v. Comm'r of Soc. Sec.*, No. 24-CV-258, 2024 WL 4767031, at *3 (S.D.N.Y. Nov. 13, 2024) (citing *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("We decline Bavaro's invitation to take judicial notice of the decline of the photofinishing industry and deem the position infeasible for

10

her.  A vocational expert testified to the existence of such jobs at the national and regional level.  The ALJ was entitled to credit that testimony . . . .")).

Additionally, the cases Plaintiff cites to support this argument are inapposite. Plaintiff cites *Zacharopoulos v. Saul*, 516 F. Supp. 3d 211 (E.D.N.Y. 2021) for the proposition that "at least one Court has determined that the job of 'document preparer' is obsolete."  P. Memo. at 16.  However, in that case the court focused on the unreliability of the specific testifying vocational expert "whose opinions have been repeatedly called into question."  *Zacharopoulos*, 516 F. Supp. 3d at 225. Plaintiff advances no such argument as to the VE who testified here.  Plaintiff also cites *Feeley v. Comm'r of Soc. Sec.*, No. 14-CV-4970, 2015 WL 3505512 (D.N.J. June 3, 2015).  While that decision found that a VE's testimony "that in 2012 there were approximately 970,000 telephone quotation clerk jobs available nationally, and 95,000 available regionally, seems dubious," here the VE testified that there are 2,700 jobs in the national economy for a telephone information clerk.  *Feeley*, 2015 WL 3505512, at *10; AR at 97.  The VE testimony in this case did not suffer from the same lack of plausibility as the testimony in *Feeley*.

Plaintiff's argument that the VE failed to identify jobs that exist in significant numbers in the national economy depends on the success of her argument that the jobs the VE identified were obsolete and therefore do not count toward the number of jobs that Plaintiff could perform.  However, Plaintiff's predicate obsolescence argument is not persuasive.  The number of jobs identified by the VE, including 15,000 document preparer positions, 2,700 information clerk

positions, and 6,200 para mutual ticket checker positions—a total of 23,900 positions—falls within the range that courts in this Circuit have identified as significant. AR at 96–97; *see Tafazwa S. v. Comm'r of Soc. Sec.*, No. 22-CV-10736, 2023 WL 6390625, at *7 (S.D.N.Y. Oct. 1, 2023) (collecting cases) ("While there is authority to suggest that 4,000–5,000 jobs are not a significant number . . . a total number over 17,000 is considered sufficient to satisfy the Commissioner's step five burden."). Therefore, the ALJ did not err by relying on VE testimony.

**B.    The ALJ's RFC Determination Was Supported by Substantial Evidence**

Finally, Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence. In particular, Plaintiff claims the RFC did not take into account Plaintiff's limitations in interacting with others and Dr. Deneen's testimony regarding how Plaintiff's cognitive deficits and mood symptoms interfere with her daily functioning. P. Memo. at 19–20. On reply, Plaintiff argues that the RFC failed to consider how the Second Circuit has described "moderate limitations." Reply at 2.

First, Plaintiff asserts that the ALJ "failed to account for [Plaintiff's] moderate limitations in interacting with others . . . ." P. Memo. at 19. The RFC determination concluded that Plaintiff

> [C]an understand, remember, and carry out simple instructions. She can work with the public on a one-to-one basis but *cannot work with the public if more than one person is involved in the interaction.* She can work in proximity to coworkers *but should not work on joint or shared tasks.*

AR at 16 (emphasis added).  This part of the decision demonstrates that the RFC expressly *did* take into account Plaintiff's limitations in interacting with others, noting that Plaintiff can only work with the public on a one-to-one basis and should not work on joint tasks with coworkers.  *Id.*

Further, the decision described the record evidence supporting this conclusion.  The decision cited the consultative examination performed by Dr. Deneen in March 2021, at which Plaintiff "behaved cooperatively and demonstrated adequate social skills."  AR at 20.  Additionally, the decision explained that, "[a]ccording to Dr. Deneen, the claimant would be able to interact with coworkers/supervisors/public without limitation and would have no more than mild deficits in the ability to carry out simple instructions, make decisions, sustain concentration/pace, and sustain an ordinary routine . . . ."  *Id.*  The ALJ found that Dr. Deneen's opinion was consistent with the opinions of Dr. Kamin and Dr. Fassler "who all conclude that the claimant has had no more than moderate work-related mental restrictions."  *Id.*

Additionally, the ALJ noted that Dr. Fassler's opinion supported the conclusion that Plaintiff could "respond appropriately to supervisors/coworkers and usual work situations, and deal with changes in a routine low contact work setting." *Id.*  The decision similarly explained that Dr. Kamin "identified moderate restrictions in [Plaintiff's] ability to carry out detailed instructions, get along with peers, respond appropriate[ly] to changes in work setting, and set realistic goals independently."  *Id.*  Plaintiff does not address this analysis of the medical opinion

evidence and fails to assert any way in which it is erroneous.  Additionally, the ALJ

noted that his findings regarding Plaintiff's ability to interact with others with

limitations was consistent with Plaintiff's report that, while she denied socializing,

progress notes indicate that she reported enjoying activities with family members.

*Id.* at 20–21.

Next, Plaintiff asserts that "the ALJ failed to consider Dr. Deneen's opinion

that Plaintiff's cognitive deficits and mood symptoms may significantly interfere

with her ability to function daily."  P. Memo. at 19 (citing AR at 861).  To the

contrary, the ALJ expressly considered Dr. Deneen's testimony, finding it

persuasive in its conclusion and consistent with Dr. Kamin and Dr. Fassler's

opinions "that the claimant has no more than moderate work-related restrictions."

AR at 20.  As to the portion of Dr. Deneen's testimony about cognitive deficits, the

ALJ explained that "the cognitive deficits identified by Dr. Deneen are not generally

reflected in the treatment record.  The claimant's providers did not identify

intellectual issues and indicated that her attention and memory skills were fair."

*Id.* at 21.  Similarly, the ALJ stated that "mental status assessments documented in

progress notes and during consultative examinations do not reflect behavioral

abnormalities."  *Id.* at 20.  Thus, the ALJ determined that this particular statement

about cognitive deficits was not supported by the treatment records and not

consistent with other evidence in the record.

As to Dr. Deneen's reference to mood symptoms, the ALJ acknowledged that

Plaintiff complained of mood swings and at times exhibited an angry or depressed

14

mood, but noted that Plaintiff also indicated "that she could attend to her personal care, cook, clean, do laundry, and shop online." *Id.* at 20–21. Additionally, the decision explained that "[t]he claimant noted that her symptoms were adequately controlled with medication and her providers generally indicated that there was no significant change in her condition." *Id.* at 20. Thus, the ALJ did consider evidence of Plaintiff's mood swings, but found that they were adequately controlled. The decision concluded:

> In consideration of [Plaintiff's] anger issues and mood swings, she can work with the public on a one-to-one basis but cannot work with the public if more than one person is involved in the interaction. She can work in proximity to coworkers but should not work on joint or shared tasks.

*Id.* at 21.

On reply, Plaintiff cites *Nunez v. Comm'r of Soc. Sec.*, 160 F.4th 60 (2d Cir. 2025) for the proposition that "'moderate limitations' generally mean symptoms that interfere with functioning for up to one-third of the day." Reply at 2. From this premise, Plaintiff argues that "[a] person whose symptoms interfere with social functioning for up to one-third of the workday cannot reasonably be found capable of unlimited interaction with others—whether one-on-one or otherwise—throughout the workday." *Id.* This argument is flawed for several reasons. First, the cited *Nunez* decision was amended and superseded by *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60 (2d Cir. 2025). The superseding decision omitted the very sentence that

15

Plaintiff appears to rely on.[3]  Further, even considering the sentence the Second Circuit later omitted, it was referring to moderate limitations with respect to the ability to sustain an ordinary routine, maintain concentration, and maintain regular attendance at work or perform activities within a schedule.  *See Nunez*, 160 F.4th at 69.  Here, Plaintiff's limitations were different in that they concerned interacting with others, and Dr. Deneen's opinion supported the conclusion that she could "interact with coworkers/supervisors/public without limitation."  AR at 20.  Dr. Fassler's opinion supported the conclusion that she could "respond appropriately to supervisors/coworkers and usual work situations, and deal with changes in a routine low contact work setting."  *Id.*  Accordingly, the ALJ concluded that Plaintiff "can work with the public on a one-to-one basis but cannot work with the public if more than one person is involved in the interaction.  She can work in proximity to coworkers but should not work on joint or shared tasks."  *Id.* at 16.  Thus, contrary to Plaintiff's contention, the ALJ *did* incorporate Plaintiff's impairments into the RFC.

Finally, Plaintiff's claim that "[i]t is entirely unclear how the ALJ reached [his] conclusion," P. Memo at 20, is at odds with the decision itself, which explains its conclusion, including by reference to the medical opinions described above.  At bottom, Plaintiff disagrees with how the ALJ weighed evidence in the record, but

---

[3] *Compare Nunez*, 160 F.4th at 69 (stating, "[a]ccording to the SSA's impairment questionnaire, a finding of 'moderate limitations' suggests that Nunez's ailments interfere with his work up to one-third of an 8-hour workday."), *with Nunez*, 164 F.4th at 68–69 (omitting that sentence from the same paragraph of the decision).

16

the ALJ has discretion to weigh the evidence so long as the conclusion is supported by substantial evidence. The ALJ's decision is supported by substantial evidence and should be affirmed.

## IV.    CONCLUSION

For the reasons discussed above, the undersigned respectfully **RECOMMENDS** that the Commissioner's decision be **AFFIRMED** and Plaintiff's action **DISMISSED**.

**PROCEDURE FOR FILING OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. *See* Fed. R. Civ. P. 6(a), (b), (d). Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Vernon S. Broderick, United States Courthouse, 40 Foley Square, New York, New York 10007-1312. Any requests for an extension of time for filing objections must be directed to Judge Broderick.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *see Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

17

Dated: May 7, 2026
     New York, New York

                                      Henry J. Ricardo
                                        United States Magistrate Judge

18